# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Pamela M. Haslam | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-1037 |
| | ) | |
| DePue Unit School District #103, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Before the Court is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim (d/e 3).  For the reasons below, the Court recommends dismissal of Count I (the wrongful discharge claim), without prejudice to filing an amended complaint.  The Court recommends denial of the motion in all other respects.

## STANDARD

Plaintiff's allegations are accepted as true for purposes of ruling on a motion to dismiss, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to Plaintiff.  Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004); Bethlehem Steel Corp. v. Bush,

918 F.2d 1323, 1326 (7th Cir. 1990).  "[C]omplaints are construed favorably to their drafters . . .A complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief."  Hrubec v. National Railroad Passenger Corp., 981 F.2d 962, 963 (7th Cir. 1992).  "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), *quoting* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Exhibits to a Complaint are considered a part thereof, and "to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls."  Centers v. Centennial Mortgage, Inc., 398 F.3d 930, 933 (2005).  Additional allegations may be made by affidavit or brief and are properly considered by the Court on a motion to dismiss.  Hrubec, 981 F.2d at 963-64.

## ALLEGATIONS

Plaintiff's allegations are set forth as true for purposes of this order.

Plaintiff began her employment with Defendant Depue Unit School District #103 as a bookkeeper, secretary and treasurer in August, 1993. About ten years later, on October 19, 2003, she was injured in a fall in her

home.  She had to take medical leave, receiving medical clearance to return to work on January 12, 2004.

Plaintiff did return to work on January 12, 2004, where she was met by the Superintendent.  The Superintendent informed Plaintiff that Plaintiff was suspended and placed on paid administrative leave.  The Superintendent did not inform Plaintiff of the reasons for her suspension.

On January 14, 2004, Plaintiff was requested to and did appear with her counsel at a meeting with the Superintendent and Defendant's counsel.  Despite her request, Plaintiff was given no notice of what would be discussed at the meeting.   At the meeting, Plaintiff's counsel "was told the meeting had nothing to do with the plaintiff's job performance, but rather some 'questions' that the superintendent would require some answers to." (Complaint, d/e 1, p.2, para. 11).  Plaintiff responded to questioning from Defendant's counsel, but no one responded to her repeated requests to be informed of the specific concerns about her job performance.  She indicated she would answer further questions with the full Board of Education present.  Defendant's counsel informed Plaintiff at the close of the July 14th meeting that she was fired.  Defendant "wrongfully and without just cause discharged the plaintiff without affording the plaintiff adequate

notice nor the opportunity to be heard by her employer on the purported charges against her." (Complaint, d/e 1, p. 5, para. 14).

On January 15, 2004, Defendant's agents demanded Plaintiff return for further questioning by the Superintendent and Board counsel. Yet Defendant refused to advise Plaintiff of any specific questions to be asked, despite Plaintiff's requests. Defendant also demanded Plaintiff return her keys to the school. Plaintiff reiterated her position that she would answer questions of the Superintendent or Board counsel before the Board of Education.

On January 21, 2004, Defendant met in executive session at its regularly scheduled board meeting, without the presence of Plaintiff or her counsel. Plaintiff's counsel was then allowed to address the Board briefly, but the Board asked no questions, conducted no hearing, and did not state its position.

On January 22, 2004, Plaintiff learned that Defendant was taking the position that Plaintiff had effectively resigned her position. At no time did Plaintiff voluntarily resign from her position.

About one year later, on or about January 12, 2005, Plaintiff filed her Complaint in the Circuit Court of Bureau County, Illinois, alleging wrongful

discharge and a violation of her procedural due process rights.  Defendant removed the case to federal court.

## ANALYSIS

### I.  COUNT I: WRONGFUL DISCHARGE

Plaintiff attaches a "non-certified handbook" (the "handbook") to her Complaint that she alleges establishes rights for her and constitutes an employment agreement with Defendant.[1]  She argues that the handbook provides that she can be terminated only for just cause upon a hearing before the Board of Education.  Defendant argues that the handbook creates no enforceable rights and is not a contract, because it lacks mandatory directives and it has a disclaimer.

An unnumbered page of the handbook (presumably the last page)[2] states in full:

DISCLAIMER

Nothing contained in this manual is intended, nor should be interpreted to create a contract or grant contractual rights of any kind.  The policy manual is intended to be a set of employee guidelines.  The employer reserves the right to take

---

[1] According to Defendant, Plaintiff held a "non-certified" position, meaning she was not required to have state certification.

[2] The handbook is scanned in before the Complaint, with the disclaimer page last.

>whatever action it deems appropriate in all employment decisions.

(Complaint, d/e 1).

Plaintiff does not address Defendant's arguments regarding the disclaimer. (d/e 10, p. 8). She argues instead that Defendant is estopped from denying her status as a "contract employee" because of prior statements made by Defendant's counsel in connection with an administrative review proceeding before a Bureau County Circuit Court. Plaintiff attaches one page of a letter and one page of a brief in which Defendant's counsel purportedly concedes that Plaintiff "was a contract employee who could only be terminated by a decision of the Board of Education. She was subject to a District policy which required that cause for her dismissal be proven before a mid-term dismissal." (d/e 10, p. 7, quoting Ex. A). Defendant strenuously objects to consideration of Plaintiff's additional exhibits and allegations, on the grounds that its motion to dismiss has not been converted to a summary judgment motion. Defendant then launches into a litany of Plaintiff's misconduct that warranted her suspension and termination. Defendant also asserts Plaintiff was notified in writing that her failure to appear at the January 15th meeting would be treated as a "voluntary quit."

It is not necessary for the Court to consider Plaintiff's new allegations or Plaintiff's new exhibits in order to make a recommendation on the motion to dismiss. The motion focuses on whether the handbook attached to the Complaint creates contractual rights for Plaintiff, and that is all this order concerns. In any event, questions about the effect of Defendant's positions in other litigation, and about whether Plaintiff was terminated or effectively quit, are important but cannot be answered now on a motion to dismiss.

The question before the Court is whether the handbook attached to the Complaint can form the basis for Plaintiff's wrongful discharge and procedural due process claims. Plaintiff alleges that the "handbook and the law applicable in such circumstances acted as an employment agreement between the plaintiff and the defendant." (Complaint, d/e 1, p.1, para. 5). Under Illinois law, employment at-will is the presumption, but a presumption that can be overcome by an employer's policy statements otherwise. Long v. Illinois Municipal Electric Agency, 90 F.Supp.2d 181, 185 (C.D. Ill. 2000). An employee handbook may create contractual rights when three conditions are met: 1) the handbook contains "a promise clear enough that an employee would reasonably believe that an offer has been made"; 2) the statement is disseminated to the employee, who reasonably

believes it to be an offer; and 3) the employee accepts the offer by commencing or continuing to work.  Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 115 Ill.2d 482, 490, 505 N.E.2d 314, 318 (1987).[3]

Illinois courts generally give force to unambiguous and prominently displayed disclaimers in employee handbooks.  See Border v. City of Crystal Lake, 75 F.3d 270, 273 (7th Cir. 1996); Long v. Illinois Municipal Electric Agency, 90 F.Supp.2d at 189 (and cases cited therein).  Illinois appellate courts have at times disregarded disclaimers when they are buried inconspicuously in mounds of text, or are contradicted by clear and mandatory directives elsewhere in the handbook.  See, e.g., Wheeler v. Phoenix Co. of Chicago, 276 Ill.App.3d 156, 162-63, 658 N.E.2d 532, 535-57)(disclaimer not effective where manual also stated "in the event of any infraction . . .the following procedure *will* be used.  The Company *will* use a progressive disciplinary procedure; disclaimer not conspicuous) (emphasis supplied); Long v. Tazewell/Pekin Consolidated Communication Ctr, 215 Ill.App.3d 134, 140, 574 N.E.2d 1191, 1193-94 (1991)(disclaimer

---

[3]In Duldulao, the Illinois Supreme Court found an employee handbook did create contractual rights where it stated termination "cannot occur without proper notice and investigation," that permanent employees are "never dismissed without prior written admonition and/or an investigation," and that "three warning notices are required before an employee is dismissed".  115 Ill.2d at 491, 505 N.E.2d at 318.

"in effect hidden" and "not unequivocal"); Hicks v. Methodist Med. Ctr., 229 Ill.App.3d 610, 614, 593 N.E.2d 119, 121-22 (1992)(disclaimer not prominently displayed, but instead slipped under heading of "Revisions"); Perman v. ArcVentures, Inc., 196 Ill.App.3d 758, 554 N.E.2d 982 (1990)("discharges *must* be approved in advance," "are subject to employee appeal," and disclaimer not conspicuously set off); Long, 90 F.Supp.2d at 189 (distinguishing Illinois appellate cases that refused to enforce disclaimer as either involving a clear promise or an inconspicuous/ambiguous disclaimer).

    The disclaimer here is conspicuously placed in the center of a separate page (though unnumbered), with an all-caps heading announcing "Disclaimer." Its language is simple and direct: no contractual rights "of any kind" are created and "the employer reserves the right to take whatever action it deems appropriate in all employment decisions." No amount of liberal construction allows an inference that an employee could reasonably believe the manual conferred contractual rights in the face of this retention of unbridled discretion regarding employment decisions. *See, e.g.,* Garcia v. Kankakee County Housing Authority, 279 F.3d 532, 535-36 (7th Cir. 2002)(manual created no property interest in job where disclaimer said that

manual created no rights and employer retained right to terminate relationship at will). Plaintiff does not argue otherwise, nor does she argue that the disclaimer is void for some other reason.

Additionally, the handbook does not contain the kind of specific mandatory directives that would confer contractual rights on Plaintiff regarding her termination. It states in relevant part:

> Employees on an annual contract may be recommended for dismissal for cause by the Superintendent upon recommendation of the employee's supervisor.[4]
>
> Prior to recommending dismissal, the supervisor must schedule at least one conference with the employee, at which time reasons for dismissal shall be discussed. Normally, several attempts should be made by the supervisor to correct deficiencies before termination becomes necessary.
> If desired by the employee, appeal from the supervisor's recommendation may be made to the Superintendent.
>
> Termination of employment of full-time employees, for whatever cause, is subject to approval by the Board of Education.

(Complaint, d/e 1, Ex. A, p. 3).

Plaintiff argues that "[f]rom these statements it can clearly be surmised that a non-certified employee was one that was on an annual contract, and further that the employee could only be terminated for cause." (d/e 10, p. 6). Yet the language says only that annual contract employees

---

[4] In this case, the Superintendent apparently was Plaintiff's supervisor.

"may" be "recommended" for dismissal for cause. That does not mean annual contract employees can be dismissed <u>only for cause</u>. This kind of permissive language does not amount to a clear promise, in light of the conspicuous disclaimer. *See* <u>Border v. City of Crystal Lake</u>, 75 F.3d 270, 274 (7th Cir. 1996)(no promise of dismissal only for just cause where employees were subject to dismissal "at any time, as may be appropriate, for conduct or performance"); <u>Miller v. Crystal Lake Park District</u>, 47 F.3d 865 (7th Cir. 1995)("Department Heads, with the approval of the Director, may dismiss any employee for just cause" did not give rise to protected property interest); <u>Lashbrook v. Oerkfitz</u>, 65 F.3d 1339, 1347 (7th Cir. 1995)(same language as in <u>Miller</u>, described as permissive in dicta); <u>Long</u>, 90 F.Supp.2d at 187 (no promise made by statement that "Department Heads and Managers may be suspended or discharged at any time for good cause.").[5] Further, the phrase "for whatever cause" does not suggest that annual contract employees are terminable only for cause. "*Whatever* cause" clearly encompasses any reason, justified or not, for dismissal, and

---

[5] Even <u>Perman</u>, an Illinois appellate court decision which has been criticized by the Seventh Circuit as "rather permissive" (<u>Border</u>, 75 F.3d at 274-75) involved mandatory language not present here.

the term "full-time employee" is not restricted to exclude annual contract employees.[6]

The only mandatory language regarding termination merely requires an employee's supervisor to schedule one conference to "discuss" reasons for dismissal before recommending dismissal. Nowhere does the manual require prior notice or an opportunity for Plaintiff to present her case to anyone before termination. Similarly, that terminations are "subject to approval by the Board" says nothing about rights to notice and a hearing, or dismissal for good cause only.

Accordingly, the Court believes the conclusion is inescapable that the handbook attached to the Complaint creates no contractual rights for Plaintiff regarding her termination.

The wrongful discharge claim should therefore be dismissed, but without prejudice to filing an amended complaint. Plaintiff correctly points out that "the only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process." (d/e 10, p. 4, *citing* International Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 733

---

[6]Plaintiff appears to assert she was an annual contract employee, which the Court accepts as true for purposes of this order.

(7th Cir. 1999)). As currently pled, the wrongful discharge claim is expressly based on the handbook attached to the Complaint, which the Court has concluded confers no contractual rights regarding Plaintiff's termination. However, that conclusion does not automatically mean Plaintiff was an at-will employee.  A legal basis for Plaintiff's wrongful discharge claim may exist separate from the handbook, and Plaintiff requests leave to file an amended complaint if necessary.[7]  Accordingly, the Court recommends dismissal of Count I, without prejudice to the filing of an amended Complaint.

## II.  COUNT II (PROCEDURAL DUE PROCESS)

Defendant argues that "Plaintiff has alleged no expectation of continued employment by contract or any other source of entitlement." (d/e 4, p. 8).  However, Plaintiff does allege that she had a "cognizable property interest in her continued employment." (Complaint, d/e 1, p. 6, para. 22). She does not specify the origin of that interest, but she does not have to–she if free to plead conclusions.  The Court cannot require the plaintiff "to plead enough facts to show that it would be worthwhile to put the

---

[7]For example, the handbook attached to the Complaint was adopted in 2003.  There may be a prior version of the handbook which did create enforceable rights when Plaintiff began working in 1993.  See Doyle v. Holy Cross Hosp., 186 Ill.2d 104 (1999).

defendants to the bother of answering the complaint . . . All that the rules require, . . . is that a complaint state the plaintiff's legal claim . . . together with some indication of time and place." Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004).

The Court's analysis effectively precludes Plaintiff from asserting a protected property interest arising from the handbook. However, an employee handbook is not the only way Plaintiff may prove a protected property interest in her job– that interest can arise "from a statute, regulation, municipal ordinance, or an express or implied contract–those rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Border, 75 F.3d at 273 (7th Cir. 1996)(other citations omitted), *citing* Perry v. Sindermann, 408 U.S. 593, 602 (1972)(discussing possibility that unwritten 'common law' through the conduct of an organization may create property interest in job even without explicit contract); Kiddy-Brown v. Blagojevich, 408 F.3d 346, 360-61 (7th Cir. 2005) (discussion of how protected property interest in employment may arise, including "mutually explicit understandings"); Hohmeier v. Leyden Community High Schools District 212, 954 F.2d 461,

464 (7th Cir. 1992)(recognizing that school board's policy promulgated through its rule-making authority could create property entitlement).

In sum, the Court cannot conclude beyond doubt at this stage that Plaintiff has no constitutionally protected property interest in her job. That determination better awaits a fully developed factual record.

## CONCLUSION

WHEREFORE, the Court RECOMMENDS that Defendant's motion to dismiss be granted in part and denied in part (d/e 3). The Court recommends dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of Count I of the Complaint, without prejudice to filing an amended complaint. The Court recommends denial of the motion to dismiss in all other respects.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:   July 1, 2005

s/ Byron G. Cudmore
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE